**WACHOVIA BANK AND TRUST CO., N.A., et al., Plaintiffs,**

v.

**NATIONAL STUDENT MARKETING CORP. et al., Defendants.**

M.D.L. No. 105.
Civ. A. No. 166–73.

United States District Court, District of Columbia.

Nov. 21, 1978.

Juan A. Del Real, Richard M. Phillips, Hill, Christopher & Phillips, P. C., Washington, D. C., for plaintiffs.

Milton V. Freeman, Thomas D. Nurmi, Robert H. Winter, Arnold & Porter, Washington, D. C., for defendants White & Case and Marion Jay Epley, III.

William E. Hegarty, Mathias E. Mone, Harvey J. Golubock, Joseph W. Muccia, Cahill, Gordon & Reindel, New York City, for defendants Peat, Marwick, Mitchell & Co., Anthony M. Natelli and Joseph Scansaroli.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

In this private federal securities laws litigation, filed by the Wachovia Bank and Trust Company and other plaintiffs[1] (the Wachovia plaintiffs), two questions are presented for the Court's resolution. First, do the plaintiffs have implied causes of action under § 17(a) of the Securities Act of 1933 (1933 Act)[2] and §§ 10(b), 13(a) and 14(a) of the Securities Exchange Act of 1934 (1934 Act)?[3] Second, is this private action, brought under these statutory sections, barred by the applicable statute of

---

1. This is one of several private lawsuits growing out of the National Student Marketing Corporation stock fraud scheme. M.D.L. No. 105. The plaintiffs in this proceeding are Wachovia Bank and Trust Co., First Wisconsin Trust Co., The Dreyfus Offshore Trust, and the National Fire Insurance Company of Hartford. *See* note 7 *infra.*

2. 15 U.S.C. § 77q(a).

3. 15 U.S.C. §§ 78j(b), 78m(a) and 78n(a).

limitations and, if so, is there an independent cause of action based on common law fraud, breach of fiduciary duty and legal malpractice?

These issues have been raised by the law firm of White & Case, Marion J. Epley, a partner, and the accounting firm of Peat, Marwick, Mitchell & Co. (Peat Marwick).[4] The defendants have moved for judgment on the pleadings under Rule 12(c), Federal Rules of Civil Procedure, or alternatively to dismiss the complaint with prejudice under Rule 12(b)(6).

The Court has considered the various memoranda, affidavits and exhibits filed as well as the oral argument of counsel. For the reasons set forth herein the Court finds that plaintiffs have stated a private cause of action under § 17(a) of the 1933 Act and § 10(b) of the 1934 Act and, therefore, defendants' motion for judgment on the pleadings on the issue of implied causes of action is denied. However, the Court agrees with the defendants on the statute of limitations issue and concludes that the federal claims asserted by plaintiffs are time-barred and the remaining claims must be dismissed for lack of pendent jurisdiction.

## INTRODUCTION

In late 1969 when the economic fortunes of the National Student Marketing Corporation (NSMC) were most favorable and the reports on its financial operations extremely optimistic, the Wachovia plaintiffs purchased at a private placement nearly five million dollars worth of that corporation's stock. The terms of the purchase were governed by two contracts between the parties, dated December 17, 1969. White &

Case, acting as NSMC's counsel, drafted a Common Stock Purchase Agreement and issued a legal opinion to plaintiffs. Peat Marwick, the independent auditor of NSMC, certified the annual financial statements and played a role in preparation of interim financial reports and documents filed with the Securities and Exchange Commission (SEC).

In February of 1970, almost immediately following the Wachovia transaction, NSMC's fortunes suffered a sharp reversal and the stock's market price dropped markedly.[5] Shortly thereafter, in early 1970, two civil actions arising out of the collapse were filed in the Southern District of New York federal court. *Garber v. Randell,* (March 2, 1970); *Lipsig v. National Student Marketing Corp.,* (May 15, 1970) (naming Peat Marwick as defendant). In early 1972, a third action was filed in the Southern District, *Natale v. National Student Marketing Corp.,* (February 18, 1972) (naming White & Case as defendant).[6] Also, on March 19, 1970, a civil complaint was filed in the Southern District of Texas federal court. *Stuckey v. National Student Marketing Corp.,* (March 19, 1970). While White & Case and Peat Marwick were not parties in either *Garber* or *Stuckey,* the complaints outlined the alleged fraudulent scheme and financial manipulation that underlie the Wachovia complaint. A complaint was also filed in October 1971 in the Southern District of Ohio, *Monroe v. Peat, Marwick, Mitchell & Co.,* alleging that the accountants aided and abetted others in misrepresenting Student Marketing's financial condition.

In February 1972, the SEC filed an enforcement and injunctive action against the

---

4. The defendants also include Anthony M. Natelli and Joseph Scansaroli, members of Peat Marwick.

5. The low bid price fell from 69½ on December 17, 1969, to 26 on February 17, 1970 (after giving effect to a two-for-one stock split). National Quotation Bureau Report, Dec. 1, 1976, at 16, 18.

6. Marion J. Epley, III, was first named as a defendant in the Consolidated, Amended and

Supplemental Complaint, *Garber v. Randell,* No. 70–835 (S.D.N.Y. June 2, 1972).

Taken together, the New York class action filings were complaints brought on behalf of all purchasers of NSMC stock who made their purchases between April 1, 1968, and February 17, 1972, and therefore included the Wachovia group as "asserted" class members. On November 29, 1972, following formal class certification and notice, the Wachovia plaintiffs officially "opted out" of the class.

major participants in the corporate acquisition and merger of National Student Marketing and Interstate National Corporation.[7] White & Case and Peat Marwick, among others, were named as defendants in that proceeding.

Despite this turn of events, more than three years elapsed after their December 1969 purchase before the Wachovia plaintiffs sought relief. On January 29, 1973, their original complaint was filed seeking damages from NSMC, several of its officers and employees; Peat Marwick, the partner in charge of the Washington, D. C., office, Anthony M. Natelli; and the auditor, Joseph Scansaroli. The complaint charged those named defendants with a conspiracy to defraud and violations of applicable federal securities laws in connection with plaintiffs' purchase of NSMC common stock in 1969.[8] The complaint did not include any common law counts.

On January 27, 1973, two days before this suit was filed, the Wachovia plaintiffs and the attorney-defendants entered into a letter agreement that the statute of limitations would be tolled for two years from that date as to them.[9] By its terms, however, no claims could be asserted which were then barred by any applicable provision of law.

It was not until May 28, 1975, that the Wachovia plaintiffs amended their original complaint to include White & Case and Epley as defendants. The amended complaint charges those attorneys with various securities laws violations in addition to common law fraud, breach of fiduciary duty and legal malpractice.

In addition to the motions of the attorney and accountant defendants addressed in this opinion, the Wachovia plaintiffs seek to amend the original complaint, largely to raise common law fraud claims against Peat Marwick and the other remaining original defendants. Also before the Court is a motion of the defendant Roger O. Walther, a principal executive officer of NSMC and a major participant in its operations. He seeks to amend his answer to raise the statute of limitations defense.

## THE IMPLIED CAUSES OF ACTION ISSUE

In seeking dismissal of all claims asserted under § 17(a) of the 1933 Act and §§ 10(b) or 14(a) of the 1934 Act,[10] the defendants contend in substance that since certain provisions of the securities laws expressly provide private remedies for the conduct alleged here, the Wachovia plaintiffs cannot bypass the substantive and procedural limitations of those provisions by basing their claims for relief on judicially implied causes of action under the above-cited provisions. Resort to the express remedies is now time-barred and thus dismissal of the present implied claims would effectively foreclose any recovery under the federal securities laws. Plaintiffs strenuously object that their allegations encompass conduct which is not covered by the express provisions and which clearly falls within the recognized scope of implied causes of action.

7. *SEC v. National Student Marketing Corp.*, 457 F.Supp. 682 (D.D.C.1978).

8. The plaintiffs have since settled and dismissed their claims against NSMC and various named defendants.

9. The tolling letter, dated January 27, 1973, provides that:
 White & Case and Mr. Epley are agreeable to the tolling of the statute of limitations for a period of two years from the date of this letter as to claims of [the plaintiffs] against White & Case and Mr. Epley arising out of the purchase of NSMC securities . . . in December, 1969. . . . .

In any such litigation or suit brought by [the plaintiffs] after termination or expiration of the tolling period, if White & Case and Mr. Epley plead the statute of limitations as to any claims by [the plaintiffs], it is further understood that any period during which the statute of limitations is tolled pursuant to this letter shall be excluded from the computation of the running of the limitation period. This letter shall not apply to and shall not revive any claims which [the plaintiffs], as of the date of this letter, are already barred from asserting by any applicable provisions of law.

10. Plaintiffs' claim under § 13(a) of the 1934 Act has been abandoned.

■ The Court concludes that plaintiffs have stated a claim under § 17(a) of the 1933 Act and § 10(b) of the 1934 Act. However, even assuming an implied action would be appropriate under § 14(a) of the 1934 Act, they have failed to state a claim under that provision.

Initially, it should be noted that defendants do not contest the implication of a private remedy under all circumstances, and for good reason, since an implied right of action has been recognized repeatedly under § 10(b), *see e. g., Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 196, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 730, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). With less frequency and certitude, such an action has also been sanctioned under § 17(a), *see e. g., Daniel v. International Brotherhood of Teamsters,* 561 F.2d 1223, 1244–45 (7th Cir. 1977), *cert. granted,* 434 U.S. 1061, 98 S.Ct. 1232, 55 L.Ed.2d 761 (1978); *Forrestal Village, Inc. v. Graham,* 179 U.S.App.D.C. 225, 551 F.2d 411, 413 (1977); *but see Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152, 159 (8th Cir. 1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). Rather, the defendants urge that where an express remedy covers the conduct alleged,

judicial implication of a cause of action is not necessary to effectuate the goals of the securities laws. *See Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 477, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); *Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 41, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). Thus, they do not appear to argue that implied actions under § 17(a) or § 10(b) are inapplicable to the conduct alleged, but only that such implied remedies are unnecessary under the facts and circumstances here presented since express remedies were available if the plaintiffs had chosen to use them.

Defendants contend that § 18(a) of the 1934 Act [11] and § 12(2) of the 1933 Act [12] provide remedies for the misstatements and omissions alleged by plaintiffs. Specifically, they assert that most, if not all, of the materially false and misleading statements are substantially contained in documents filed with the SEC and are thus subject to the remedy provided by § 18(a). Insofar as certain statements may not be contained in such filed documents, they urge that § 12(2) provides an adequate remedy.

■ This Court is not persuaded that these express remedies suffice to effectuate

---

11. Section 18(a), 15 U.S.C. § 78r, provides:

Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this chapter or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading. A person seeking to enforce such liability may sue at law or in equity in any court of competent jurisdiction. In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant.

12. Section 12(2), 15 U.S.C. § 77*l*, provides:

Any person who—

. . . . .

(2) offers or sells a security . . . by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

congressional intent, as indicated by the securities laws, to proscribe the type of fraudulent conduct alleged here. With limited exceptions, plaintiffs do not allege reliance upon documents filed with the SEC and, contrary to the position of defendants, such reliance is essential to recovery under § 18(a). *Heit v. Weitzen,* 402 F.2d 909, 916 (2d Cir. 1968), *cert. denied,* 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969); *Gross v. Diversified Mortgage Investors,* 438 F.Supp. 190, 195 (S.D.N.Y.1977). The fact that statements similar to those alleged by plaintiffs were also contained in documents filed with the SEC is insufficient; absent reliance upon the filing of the statements with the Commission, § 18(a) is inapplicable.[13] In addition, plaintiffs have alleged materially false statements which were never contained in a document filed with the SEC and thus are clearly exempt from § 18(a) liability.

Defendants respond that the remedy for such nonfiled statements rests with § 12(2). That provision, however, contains a number of restrictions, based in large part on the fact that it reaches even negligent misstatements and omissions, and is not directed solely at the intentional fraud alleged here. It appears doubtful that Congress intended victims of intentional fraud to be limited to the negligence remedy provided by § 12(2). Moreover, there is some question whether the section applies to the present defendants since they were not "sellers" of the securities in question. *See e. g., In re Equity Funding Corp. of America Securities Litigation,* 416 F.Supp. 161, 181 (C.D.Cal.1976). While such a restriction is appropriate in a negligence context, it clearly is unwarranted here where the participants are charged with intentional fraud.

In short, it appears that neither § 18(a) nor § 12(2) provides the plaintiffs with adequate remedies. If the Court were to recognize defendants' solution, the plaintiffs would be relegated to state courts to pursue their claims based on common law fraud. Such a suggestion needs little discussion. The gravamen of plaintiffs' complaint is that defendants participated in a scheme to manipulate the national market for NSMC stock through the broad dissemination of materially false and misleading statements concerning NSMC. Such conduct is clearly a matter of federal, not state, concern. *See* 15 U.S.C. § 78b.[14]

Since this is not a case where the allegations in the complaint fall entirely within the scope of express provisions of the securities laws,[15] and since the allegations

---

13. It is unclear whether reliance must be on the actual document filed with the SEC, or whether reliance on a copy of such document would suffice. The latter seems to be the more reasonable position since it is the knowledge that it has been filed with the Commission that justifies reliance on the document.

14. Section 78b, 15 U.S.C., provides:

transactions in securities as commonly conducted upon securities exchanges and over-the-counter markets are affected with a national public interest which makes it necessary to provide for regulation . . . in order to protect interstate commerce, the national credit, . . . and to insure the maintenance of fair and honest markets in such transactions:

. . . . .

(3) Frequently the prices of securities on such exchanges and markets are susceptible to manipulation and control, and the dissemination of such prices gives rise to excessive speculation . . . . . .

15. An implied cause of action should be available even where the alleged misconduct also falls completely within the confines of an express remedy. "The fact that there may well be some overlap is neither unusual nor unfortunate," *SEC v. National Securities, Inc.,* 393 U.S. 453, 468, 89 S.Ct. 564, 573, 21 L.Ed.2d 668 (1969), especially since recent developments have properly restricted such implied remedies to the scope authorized by specific statutory provisions. *See TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976) (materiality); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (scienter); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (purchaser/seller). Moreover, to conclude that express and implied causes of action should not overlap would require a case-by-case determination of the applicability of implied remedies under the particular factual situation presented. Such a procedure, especially in a pretrial stage when the factual bases for the various claims have not been developed, would signifi-

primarily concern a complex market manipulation rather than individual misstatements or omissions, *see Blackie v. Barrack,* 524 F.2d 891, 907 (9th Cir. 1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976), the Court concludes that plaintiffs have stated a claim under § 10(b) of the 1934 Act and § 17(a) of the 1933 Act.[16]

■■ A different conclusion is reached with respect to plaintiffs' asserted cause of action under § 14(a) of the 1934 Act. To support such a claim, plaintiffs must allege an injury to their corporate suffrage rights or an injury resulting from a corporate transaction whose approval was obtained by a misleading proxy statement. *In re Penn Central Securities Litigation,* 347 F.Supp. 1327, 1342 (E.D.Pa.1972), *aff'd,* 494 F.2d 528 (3rd Cir. 1974). In an attempt to meet the second part of the test, the Wachovia plaintiffs allege that the stock they purchased was authorized on the basis of the misleading NSMC proxy material concerning the Interstate transaction. The Court does not read the test so broadly. Plaintiffs' injury did not result from the authorization of the stock, but from their later purchase of it at an allegedly inflated price. To state a claim under the second part of the test, the alleged stock transaction must be part of the merger itself and not a subsequent transaction. Therefore, plaintiffs have failed to state a claim under § 14(a) and defendants' motion to dismiss claims asserted under that provision must be granted. Of course, to the extent allegations contained in these claims are also applicable to the alleged manipulative scheme, they are properly brought under § 10(b) and § 17(a). *See* 347 F.Supp. at 1342.

cantly burden an already complex area ·of the law.

*But see Kulchock v. Government Employees Insurance Co.,* [Transfer Binder '77–'78 Decisions] Fed.Sec.L.Rep. (CCH) ¶ 96,002 (D.D.C. 1977) (complaint dismissed on ground that there is no implied cause of action for misstatements in documents filed with the SEC because § 18 of the 1934 Act provides express remedy for same); appeal of this dismissal Order withdrawn in light of final judgment and settlement, C.A. No. 76–206 (D.D.C. July 28, 1978).

## THE STATUTE OF LIMITATIONS ISSUE

### A. Motion of White & Case and Epley

■ The District of Columbia Securities Act, the so-called "blue sky law," includes a statute of limitations which in part provides that:

> No person may bring an action under this section after two years from the contract of sale. . . .[17]

Only recently our Circuit ruled that when a private action is brought under § 10(b) of the 1934 Act and § 17(a) of the 1933 Act, this two-year blue sky period is the applicable statute of limitations. *Forrestal Village, Inc. v. Graham,* 179 U.S.App.D.C. 225, 551 F.2d 411 (1977). Since the Wachovia plaintiffs allege violations of §§ 10(b) and 17(a), and their other claims concern securities fraud, *Forrestal Village* mandates application of the two-year statute of limitations.

The pending claims against the attorney-defendants were not filed until May 1975, though, by virtue of the tolling letter, it must be assumed that these claims were filed on January 27, 1973.[18] Both of these dates are more than two years after the December 17, 1969, contracts of sale. The defendants accordingly urge that the securities laws claims are untimely filed under the blue sky law and should be dismissed with prejudice. Because plaintiffs' common law claims are allegedly dependent upon the time-barred securities claims, defendants contend that the Court should not exercise pendent jurisdiction over the state law claims.

**16.** Since defendants' motions are primarily directed to the distinction between express and implied remedies, the Court need not consider the relationship between the two implied causes of action.

Defendants make other minor arguments in support of their motions to dismiss, none of which has merit.

**17.** D.C.Code § 2–2413(e) (1973).

**18.** *See* p. 1004 and note 9.

Plaintiffs argue initially that *Forrestal Village* should not be applied retroactively and that they are entitled to the benefits of the D.C. three-year statute of limitations for common law fraud actions.[19] Citing the criteria of *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), they allege that *Forrestal Village* overrules the only precedent in the District and therefore creates a new principle of law which cannot fairly be applied retroactively.

 The Court, in agreement with defendants, cannot accept this argument. Indeed, White & Case point out that prior law is by no means unequivocal, consisting largely of three unreported United States District Court cases, all of which barred actions under the three-year general fraud limitations period.[20] The *Forrestal Village* court did not announce a new general principle of law, but "join[ed] the majority of circuits" in applying a local blue sky law statute of limitations in securities fraud cases. 551 F.2d at 413. Lastly, this Court has already applied the decision retroactively. *Houlihan v. Anderson-Stokes,* 434 F.Supp. 1324 (D.D.C.1977).

Having adopted the blue sky provision, the Court must next determine when the two-year period commenced to run. Plaintiffs' principal opposition to defendants' motion to dismiss is that the federal common law tolling doctrine is applicable and held the limitations period in abeyance until such time as the alleged fraud was or should have been discovered. They identify the relevant date as February 3, 1972, when the SEC filed its injunction action before this Court.[21] Only then, they contend, was it that "[t]he first hint of any participation by White & Case in the massive NSMC stock fraud surfaced. . . ."[22]

 The federal tolling doctrine appears in *Bailey v. Glover,* where the Supreme Court announced that:

> the decided weight of authority is in favor of the proposition that where the party injured by the fraud *remains in ignorance of it without any fault or want of diligence or care on his part,* the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.

88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1875) (emphasis added). Where federal securities laws violations are alleged, as here, this time-honored doctrine has been recognized to mean that the statute of limitations cannot be said to run until a plaintiff, in the exercise of reasonable diligence, discovered or should have discovered the fraudulent activity underlying his cause of action.[23] The law is also clear that the statutory period will not await a plaintiff's leisurely discovery of the full details of the fraudulent scheme, but begins to run when plaintiff possesses sufficient information, which in the exercise of due diligence, warrants further inquiry.[24]

White & Case and Epley do not contend that the Wachovia plaintiffs had actual knowledge of their participation in the

---

**19.** D.C. Code § 12–301(8) (1973).

**20.** *See* Reply by Defendants White & Case and Marion J. Epley, III, to Plaintiffs' Memorandum in Opposition to Motion to Dismiss the Complaint, August 26, 1977, at 18–22.

**21.** *See* note 7 *supra.*

**22.** Plaintiffs' Memorandum in Opposition to Motion by Defendants White & Case and Marion J. Epley, III, July 29, 1977, at 2.

**23.** *Cook v. Avien, Inc.,* 573 F.2d 685, 694–95 (1st Cir. 1978); *Arneil v. Ramsey,* 550 F.2d 774, 780–01 (2d Cir. 1977); *Newman v. Prior,* 518 F.2d 97, 100 (4th Cir. 1975); *Tomera v. Galt,* 511 F.2d 504, 509 (7th Cir. 1975); *Hudak v. Economic Research Analysts, Inc.,* 499 F.2d 996, 1001–02 (5th Cir. 1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975); *Vanderboom v. Sexton,* 422 F.2d 1233, 1240 (8th Cir. 1970), *cert. denied,* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970); *Janigan v. Taylor,* 344 F.2d 781, 784 (1st Cir. 1965), *cert. denied,* 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965); *Long v. Abbott Mortgage Corp.,* 459 F.Supp. 108 (D.Conn.1978).

**24.** *Cook v. Avien, Inc., supra* note 23, at 696; *Klein v. Bower,* 421 F.2d 338, 343 (2d Cir. 1970).

fraudulent scheme. Instead, they allege that the facts were such that plaintiffs, four large sophisticated institutional investors, should have formulated some suspicion against the law firm shortly after the private placement in 1969. Defendants label the following uncontroverted occurrences, established and known to the public in early 1970, as "code blue" alert notices of fraud:

a. The precipitous decline of NSMC stock within sixty days after the plaintiffs' purchase, from 69½ on December 17, 1969, to 26 on February 17, 1970; [25]

b. The loss, ranging from 1.2 to 1.7 million dollars, reported in early 1970 by NSMC for the quarter ended November 30, 1969; [26] and

c. News articles reporting NSMC financial difficulties in *Barron's* (December 12, 1969) and *The Wall Street Journal* (February 17, 1970).

In addition to the above, it is established that in early 1970, key officials of two plaintiffs, The Dreyfus Offshore Trust (general counsel and vice president) and First Wisconsin Trust Company (investment analyst), commenced investigation and contemplated suit.[27]

▮▮▮▮ The Court agrees that these facts, coupled with the several lawsuits filed in 1970, provided a clearly marked trail which, if pursued with diligence, would have led the plaintiffs to the fraud of the NSMC officials and to the attorney-defendants and their involvement in the stock sale. A statute of limitations does not become operative when a plaintiff discovers all aspects of a fraudulent scheme, but rather from the time when a clue to the facts, if pursued diligently, would lead to an uncovering of the general fraudulent scheme. *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 410 (2d Cir. 1975); *Klein v. Bower*, 421 F.2d 338, 343 (2d Cir. 1970).

This situation is virtually indistinguishable from that in the recent § 10(b) case of *Robertson v. Seidman & Seidman*, [Current] Fed.Sec.L.Rep. (CCH) ¶ 96,420 (S.D.N.Y. May 3, 1978). In that proceeding an investor asserted that the defendant-accountants certified false and misleading financial statements in a stock sale. The district court granted summary judgment and dismissed the complaint as time-barred, holding that the investor should have discovered the fraud more than two years before suit was filed. The investor relied upon the federal tolling doctrine, claiming ignorance of the accountants' role until a later time when the SEC announced proceedings against them. The court found that the investor should have discovered the fraud far earlier, because the evidence showed that in the intervening period: the stock dropped markedly in value; he had suspected fraud and had discussed it with his broker; and was aware of a class action suit arising out of the same stock offering, charging price inflation through dissemina-

---

**25.** *See* p. 2 and note 5 *supra* and affidavit of Thomas D. Nurmi, filed October 26, 1977.

 *See also Hupp v. Gray*, 500 F.2d 993, 996–97 (7th Cir. 1974) (dramatic fall in market price from $47 per share to $17.50 per share, rather than the $75 predicted to the purchaser, sufficient to put wholly unsophisticated investor on notice that "something was amiss"); *Robertson v. Seidman & Seidman*, [Current] Fed.Sec.L.Rep. (CCH) ¶ 96,420 (S.D.N.Y. May 3, 1978) (85% decline in value of stock over less than a year, among other signs, should have led plaintiff to suspect fraud). *See also Cook v. Avien, Inc., supra* note 23, at 696.

**26.** This loss was reported in the national press, including the February 17, 1970, *Wall Street Journal.*

**27.** Lawrence M. Greene, general counsel and vice president of Dreyfus, began investigating in January 1970. When questioned concerning the *Barron's* article of December 12, 1969, his deposition at p. 118 reads:

 Q Is it your understanding that upon your review of the Barron's article in January of 1970 that any subsequent investigations you made with respect to National Student Marketing were in contemplation of litigation?

 A I was greatly concerned when I read the article . . . ., and, in fact, *I was rather upset about it and I therefore began to investigate the situation more deeply.* Whatever I did following that in connection with looking into the facts is *all part and parcel of my turning the matter over to our counsel for litigation.* (emphasis added).

 Robert G. Steffel, an investment analyst, testified that First Wisconsin Trust was contemplating suit in late 1970 or early 1971.

tion of false and misleading information. While that class complaint did not specifically name the accountants, the court found that "the plaintiff should at least have been on notice that further inquiry into the fraudulent practices surrounding . . . . the public offering would be prudent," *Robertson* at 93,518, and there were public facts available indicating the accountants' role.

There is no difference between *Robertson* and this action except for the involvement of accountants rather than attorneys. That of course is of no consequence. The Wachovia plaintiffs knew that White & Case had drafted the Stock Purchase Agreement as well as the legal opinion to secure their purchase. Their blanket claim that before the SEC injunctive action was filed in 1972 they had no reason to suspect this "reputable and prestigious" law firm of any unlawful role in a stock sale is rejected. As responsible money managers and investors, they had a duty to pursue every aspect of the transaction, including the role of the legal counsel in such a suspect sale. Their experience and their access to highly specialized personnel and consultants imposed an obligation of reasonable diligence commensurate with their sophistication and standing in the financial community.

> Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it . . . . The presumption is that if the party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it.

*Wood v. Carpenter*, 101 U.S. 135, 141, 25 L.Ed. 807 (1879).

Plaintiffs argue that the question as to when they had knowledge of White & Case's fraud and the issue of reasonable care as grounds for tolling the statute are disputed factual issues and cannot be disposed of without a trial. The Court disagrees. *See Jones v. Rogers Memorial Hospital,* 143 U.S.App.D.C. 51, 53, 442 F.2d 773, 775 n. 2 (1971). The National Student Marketing matters were consolidated for pretrial discovery and have been pending for more than five years. All parties in this proceeding have conducted expensive, time consuming and exhaustive discovery. The papers, exhibits and argument on these motions have been especially thorough and, in this Court's opinion, if there are any undisclosed facts at this stage, their relevancy and materiality are minimal.

 Taken as a whole, the record is more than sufficient to show that plaintiffs should have investigated the attorney-defendants' potential role in the suspicious sale and should have known of the fraud within the two-year statute of limitations, running immediately after the sale. Plaintiffs' complaint as to White & Case and Epley is untimely filed and the motion of these defendants to dismiss must be granted. With dismissal of the federal claims at this time, the pendent state common law claims fall as well. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Robertson v. Seidman & Seidman, supra* at 93,519; *Hupp v. Gray*, 500 F.2d 993, 997 (7th Cir. 1974).

**B. Motion of Peat Marwick, Natelli and Scansaroli.**

In seeking dismissal, the accountant-defendants adopt in large measure the White & Case and Epley argument that *Forrestal Village* controls and that, in this private action under §§ 17(a) and 10(b) of the federal securities laws, the applicable statute of limitations is the two-year provision of the District of Columbia blue sky law. To counter the federal tolling doctrine urged by the Wachovia investors, they point to the several private actions filed in the New York federal courts, particularly the *Lipsig* class action of May 15, 1970, the first to name Peat Marwick as a defendant. The accountant-defendants also argue that those lawsuits, together with other events and developments widely publicized in the financial community, were yellow caution lights, all ignored by Wachovia. Since the

complaint under consideration was not brought until January 29, 1973, the federal tolling doctrine does not protect the plaintiffs.

The plaintiffs on the other hand allege and urge that filing of the several New York class actions, of which they were asserted members, tolled the running of the limitations period. The *Lipsig, Garber* and *Natale* complaints were filed on behalf of NSMC shareholders who made their stock purchases between April 1968 and February 1972, and did indeed include plaintiffs as purported members. These actions were consolidated in April 1972 and later transferred by the Judicial Panel on Multidistrict Litigation to this Court for pretrial proceedings. The New York actions were certified as class actions and, during October 1973, notice of class action determination was sent to the various class members including the Wachovia plaintiffs.

In January 1973, however, the Wachovia plaintiffs had filed the present complaint naming Peat Marwick, Natelli and Scansaroli among the defendants. In justification for their course of action they asserted that their status as institutional purchasers made their complaint dissimilar to the earlier class actions. On November 29, 1973, they "opted out" to pursue their independent claims.

Peat Marwick argues that the Wachovia plaintiffs should have filed an action within two years of the 1969 purchase and that the January 1973 complaint is therefore time-barred. The accountant-defendants contend that the statute of limitations was not tolled by the various class actions, because by opting out, the plaintiffs forfeited any benefits accruing to the class members. As members in the earlier filed class action proceedings the Wachovia plaintiffs could not exclude themselves from the class and then file lawsuits which otherwise would be time-barred.

The class action tolling doctrine is best illustrated in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), where the Supreme Court held that filing of a class action complaint tolls the running of the statute of limitations for all purported class members who timely seek intervention after the lower court has found the asserted class too small to certify. According to the Court, a contrary rule allowing participation only by those potential class members who had earlier filed motions to intervene would deprive class actions of the efficiency and economy of litigation which they are designed to promote. This rule is not inconsistent with the functional operation of a statute of limitations, since the policies of ensuring fairness to defendants and of barring plaintiffs who have slept on their rights are satisfied when a named plaintiff "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." 414 U.S. at 554–55, 94 S.Ct. at 767.

In light of these policy considerations, this Circuit has called for a "broad, functional" reading of *American Pipe.*[28] *McCarthy v. Kleindienst*, 562 F.2d 1269, 1274 (D.C.Cir. 1977). The court there extended the *American Pipe* tolling doctrine to a case where a motion for class certification had been denied not because of size but on grounds of untimeliness and nonpredominance of common questions. The court found that a motion to intervene brought by 266 asserted class members four years after the events at issue, but one day after denial of class certification, was timely, because there was no evidence of manipulative behavior by the plaintiffs and the defendants had received "sufficient notice of the contours of potential claims to toll the running of the statute of limitations." 562 F.2d at 1275. *See also United Airlines, Inc. v. McDonald*, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977).

---

**28.** *See also United Airlines, Inc. v. McDonald*, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977) (potential class members could intervene after final judgment for the purpose of appealing the denial of class certification, even though the limitations period had run).

The *American Pipe* line of cases concerns the propriety of intervention following denial of class certification. Here, there has been certification of a class which includes the Wachovia plaintiffs. Before that certification decision, plaintiffs filed a separate action. Following certification, they opted out of the class rather than pursuing class relief. The broad issue here, therefore, is whether the policy considerations of *American Pipe* operate to toll the limitations period for all purported class members until certification is decided.

■■■■ The Court finds that, under the circumstances presented here, the class action tolling doctrine does not protect the Wachovia complaint brought against the accountant-defendants. Preliminarily, the doctrine cannot operate against defendants Natelli and Scansaroli. Since they were not named in the original New York actions, they cannot fairly be charged with the notice requisite for class action tolling. Notice considerations also mean that the consolidated amended complaint naming them, filed on June 2, 1972, does not relate back for tolling purposes. *Arneil v. Ramsey*, 550 F.2d 774, 782 n. 10 (2d Cir. 1977).[29]

Insofar as Peat Marwick is concerned, plaintiffs base their opposition to the motion largely on a footnote in a Supreme Court class action decision following *American Pipe*. In *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), a case concerning notice to potential class members, the Court referred to *American Pipe* as establishing that

> commencement of a class action tolls the applicable statute of limitations as to all members of the class.

417 U.S. at 176 n. 13, 94 S.Ct. at 2152. While at least one court has found that this dictum "appears to have . . . eliminated" the general tolling question,[30] this

Court is not so persuaded. There is precedent supporting an interpretation opposite to plaintiffs' in the Second Circuit. In *Arneil v. Ramsey, supra*, that court refused to toll the running of the statute of limitations for a separate action brought by two plaintiffs who were not asserted members of a class action as originally filed. *See also Stull v. Bayard*, 561 F.2d 429, 433 (2d Cir. 1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978).

■■■■ For the Court to find otherwise, that the class action filings tolled the limitations period for plaintiffs' separate suit, would sanction duplicative suits and violate the policies behind *American Pipe*. Even assuming that this action and the original class actions raise identical issues, the filing of a class action should not cause Peat Marwick to be responsible for meeting separate independent actions by class members after their statute of limitations has run. If different issues are raised, there is even less reason to credit Peat Marwick with notice.

The Court also finds it noteworthy that the plaintiffs filed this action before class certification had been decided. If, following certification, they had determined that the class action strategy would not protect their rights and had then promptly filed a separate action, their arguments might be more persuasive. By filing their action before a certification decision, opting out of the class after certification, and then claiming the benefits of tolling, they appear to have been manipulating the tolling doctrine and other class action procedures. While the Court is aware that *American Pipe* had not been decided as of January 29, 1973, when plaintiffs filed this action, their delay is not justifiable in light of the traditional purposes of a statute of limitations.

**29.** The amendment came more than two years after the *Lipsig* action naming Peat Marwick. Therefore, even if the latter suit should have put plaintiffs on notice that individual accountants at Peat Marwick were involved in the fraud, the federal tolling doctrine cannot be added to the class action tolling doctrine to protect the suit against Natelli and Scansaroli.

**30.** *Agostine v. Sidcon Corp.*, 69 F.R.D. 437, 448 n. 13 (E.D.Pa.1975) (Truth in Lending case). *See also McAlpine v. AAMCO Automatic Transmissions, Inc.*, 1977–1 Trade Cases ¶ 61,-359 (E.D.Mich.1977) (antitrust case—court found dicta "highly persuasive" and tolled the statute of limitations for damage purposes).

Since the Wachovia plaintiffs are not protected by the class action tolling doctrine, their complaint against Peat Marwick was not timely filed and must be dismissed. In light of this disposition, it is not necessary for the Court to address Peat Marwick's contention that the instant action does not involve the same issues raised in the New York actions.

### OTHER MOTIONS

a. In light of the Court's dismissal of the Wachovia plaintiffs' complaint against the accountant-defendants, the motion of the plaintiffs to amend the complaint to add common law fraud claims against Peat Marwick, Natelli and Scansaroli is denied. The Court would not exercise pendent jurisdiction over such state claims if the amendment were allowed. *See* p. 1010 *supra*.

The motion to amend will also be denied insofar as plaintiffs seek to amend the caption to reflect the parties who have not settled, given that various cross-claims are pending and such a technical change is not necessary. The motion will be granted, at this time, only insofar as plaintiffs seek to delete references to § 13(a) of the 1934 Act under the Count I heading.

b. The Court finds that defendant Walther's motion to amend his answer to raise a statute of limitations defense is appropriate. In light of the pleadings that have been filed on this issue, the plaintiffs will not be prejudiced by the amendment.

c. The motion of the Wachovia plaintiffs to compel White & Case and Epley to produce documents, memoranda allegedly prepared for counsel, does not bear on the factual issues involved in these motions and will be denied as moot.

ORDERED accordingly.