Albert M. **KLEIN** and Daniel Slane, Plaintiffs,

v.

Harry E. **GOETZMANN**, Jr., John L. Bartolo, Lynn H. Smith, Alvin O. Beiling, Thomas J. Prinzing, James J. Mosher and Deloitte & Touche, Defendants.

No. 88–CV–780.

United States District Court, N.D. New York.

Jan. 25, 1993.

418

Lowey Dannenberg Bemporad Brachtl & Selinger, New York City (Henry A. Brachtl, Richard C. Fooshee, of counsel), Abbey & Ellis, New York City (Joshua N. Rubin, of counsel), Berger & Montague, Philadelphia, PA (Gary E. Cantor, Lawrence Deutsch, of counsel), Sugarman Wallace Manheim & Schoenwald, Syracuse (Timothy Perry, of counsel), for plaintiffs.

Bond Schoeneck & King, Syracuse (Charles Beeching, Jr., George H. Lowe, Edward Ryan Conan, Jonathan B. Fellows, of counsel), for defendants Goetzmann, Bartolo & Prinzing.

Bangser Klein & Rocca, New York City (Jonathan J. Fink, of counsel), for defendants Smith and Beiling.

Samuel B. Vavonese, Syracuse, NY, for defendant Mosher.

Shea & Gould, New York City (Richard L. Spinogatti, James J. Markowski, of counsel), for defendants Deloitte & Touche.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

## INTRODUCTION

Thus far, this court has issued two decisions in this case. *See Klein v. Goetzmann,* 745 F.Supp. 107 (N.D.N.Y.1990) ("*Klein I*"); *Klein v. Goetzmann,* 770 F.Supp. 78 (N.D.N.Y.1991) ("*Klein II*"). In *Klein I,* the court granted the individual defendants' motion to dismiss plaintiffs' common law negligent misrepresentation claim but denied their motion with respect to plaintiffs' claims based upon section 10(b) of the Securities and Exchange Act of 1934 ("1934 Act") and Rule 10b–5 promulgated thereunder as well as plaintiffs' common law fraud claim.[1] In *Klein II,* Touche moved to dismiss the claims against it on the ground that they were barred by the statute of limitations. Even though the court concluded that the one-year/three-year statute of limitations announced in

*Ceres Partners v. GEL Assoc.,* 918 F.2d 349 (2d Cir.1990), applied to plaintiffs' section 10(b) and Rule 10b–5 claims against Touche, it held that "it [could not determine) from the pleadings when the plaintiffs discovered or should have discovered fraud by Touche." *Klein II,* 770 F.Supp. at 84. Nonetheless, the court held that it could "apply the three-year prong of the *Ceres* test on the motion to dismiss." *Id.* at 85. Accordingly, the court granted Touche's motion "[a]s to claims arising out of violations occurring more than three years before the filing of the second consolidated amended complaint [on January 14, 1991], ..." *Id.*

Touche now moves for summary judgment on the remaining federal claims ("1988 claims") pursuant to Fed.R.Civ.P. 56 and for dismissal of the pendent state claims. In addition to opposing Touche's motion, plaintiffs cross-move to reinstate the claims ("1987 claims") which this court dismissed in *Klein II* as time-barred in light of Congress' enactment of Section 27A of the 1934 Act. The court heard oral argument on these motions on April 28, 1992. The following constitutes the court's findings of fact and conclusions of law.

## BACKGROUND [2]

Plaintiffs filed their original complaint in this action on July 19, 1988. Named as defendants in this original complaint were Continental Information Systems, Inc. ("CIS") and nine individuals who were officers and/or directors of CIS ("individual defendants"). Plaintiffs brought this original complaint on behalf of all purchasers of CIS common stock between May 13, 1988, and July 14, 1988. On November 13, 1989, plaintiffs filed a first amended complaint against the individual defendants. This amended complaint dropped CIS as a defendant in light of CIS' pending bankruptcy proceedings. In addition, plaintiffs' first amended complaint extended the class period to cover more than a year and a half,

---

1. At the time that the court issued its decision in *Klein I,* Deloitte & Touche ("Touche") was not a party to this action.

2. Given its previous two decisions in this case, the court will assume familiarity with the facts underlying plaintiffs' claims.

April 29, 1987 to November 18, 1988, and added allegations of fraud with respect to CIS' 1987 Annual Report and the Aerolease Transaction. As a result of discovery concerning these allegations, plaintiffs filed a second amended complaint on January 14, 1991, adding Touche as a defendant. It is the allegations in this second amended complaint which are the subject of these motions.

Touche now moves to have the court grant it summary judgment with respect to plaintiffs' 1988 claims on the ground that these claims are time-barred because plaintiffs knew, or with reasonable diligence should have discovered, the facts constituting Touche's alleged violations more than one year prior to filing their second amended complaint. *See* Touche's Memorandum of Law at 18–19. Plaintiffs, on the other hand, contend, first of all, that it is actual notice of the facts constituting fraud which starts the statute of limitations running, not inquiry notice. *See* Plaintiffs' Memorandum of Law at 25. Secondly, plaintiffs argue that even if the court were to apply the inquiry notice standard suggested by Touche, they did not, and could not, have discovered Touche's role in the CIS fraud until after Touche completed production of documents in July 1990. *See id.* at 35.

In addition, plaintiffs have cross-moved to have this court reconsider its decision in *Klein II* which dismissed their 1987 claims against Touche in light of Congress' enactment of Section 27A. In opposition to this cross-motion, Touche contends, first of all, that Section 27A does not apply to the present case. *See* Touche's Opposition Memorandum of Law at 6–7. In the alternative, Touche argues that even if the court were to find that Section 27A is applicable, the court still should not apply the statute because it is unconstitutional.[3] *See id.* at 21. The court will discuss each of these motions in turn, beginning with plaintiffs' cross-motion.

---

**3.** The court notes in passing that this argument has been foreclosed by this court's recent decision in *Aquilio v. Leupke,* 90–CV–45, 91–CV–93,

## DISCUSSION

### I. *Plaintiffs' 1987 Claims*

In *Klein II,* this court held that "the 'one year/three year' statute of limitations announced in *Ceres [Partners v. GEL Assoc.,* 918 F.2d 349 (2d Cir.1990)]* applies to the section 10(b) and Rule 10b–5 claims against Touche." *Klein II,* 770 F.Supp. at 83. Based upon this conclusion, the court granted Touche's motion to dismiss the 1987 claims as time-barred under *Ceres.* Plaintiffs now ask this court to reconsider its decision in light of Congress' enactment of Section 27A which sought to alter the retroactive effect of the Supreme Court's decisions in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), and *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).

In *Lampf* the Supreme Court adopted the same one year/three year statute of limitations for section 10(b) claims as the Second Circuit had adopted in *Ceres.* It also applied this new statute of limitations retroactively to the parties in *Lampf.* On the same day, the Supreme Court decided *Beam* in which it stated that "[w]hen the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." *Beam,* —— U.S. at ——, 111 S.Ct. at 2448, 115 L.Ed.2d at 493. The effect of this ruling was to mandate that the new statute of limitations established in *Lampf* be applied retroactively to all cases not finally adjudicated on the date *Lampf* was decided (June 20, 1991).

In response to the Supreme Court's decisions in *Lampf* and *Beam,* Congress enacted Section 27A which provides, in pertinent part:

(b) EFFECT ON DISMISSED CAUSES OF ACTION—Any private civil action implied under section 10(b) of this Act that was *commenced on or before June 19, 1991*—

---

1992 WL 349672 at *10, 1992 U.S.Dist. LEXIS 17425 at *31 (N.D.N.Y. Nov. 12, 1992), in which the court held that Section 27A is constitutional.

(1) which was *dismissed as time barred subsequent to June 19, 1991*, and

(2) which *would have been timely filed under the limitation period* provided by the laws. applicable in the jurisdiction, including principles of retroactivity, *as such laws existed on June 19, 1991*, shall be reinstated on motion by the plaintiff not later than 60 days after the date of enactment of this section.

Section 27A, Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. 102–242, § 476 (1991) (emphasis added).

In order for Section 27A to be applicable to the present case, plaintiffs' 1987 claims must meet the requirements of both subparagraph (b)(1) and subparagraph (b)(2). There is no argument that the 1987 claims meet the requirements of subparagraph (b)(1). Plaintiffs' second amended complaint was filed on January 14, 1991, prior to June 19, 1991; and the 1987 claims were dismissed as time barred on July 19, 1991, subsequent to June 19, 1991. These claims, however, do not meet the requirement of subparagraph (b)(2). They were not, as this court decided in *Klein II*, timely filed under the limitations period that existed in this circuit on June 19, 1991. On that date, *Ceres'* one year/three year statute of limitations was the law of this circuit. In fact, *Ceres* had been the law of this circuit since November 8, 1990, more than 60 days before plaintiffs filed their second amended complaint naming Touche as a defendant. Thus, Section 27A, by its very terms, does not apply to plaintiffs' 1987 claims.

■ Plaintiffs, however, offer an alternative argument in support of their cross-motion to reinstate their 1987 claims. This argument is based upon plaintiffs' contention that because their second amended complaint was filed only 67 days after *Ceres* announced a new statute of limitations they should be given the benefit of a "grace period." According to this theory, plaintiffs' claims should be treated as though filed prior to *Ceres* and therefore subject to the six year/two year statute of limitations which existed at that time. If the court were to adopt this reasoning and treat plaintiffs' claims as having been filed prior to *Ceres*, then, under certain circumstances, Section 27A might serve as a basis to reinstate plaintiffs' 1987 claims.

In order to determine whether Section 27A would affect actions filed prior to *Ceres*, the court would have to look at the principles of retroactivity which existed in this circuit on June 19, 1991. On that date, the law of this circuit was that "*Ceres Partners* was not to be applied retroactively as a routine matter." *Henley v. Slone*, 961 F.2d 23, 25 (2d Cir.1992) (citing *Welch v. Cadre Capital*, 923 F.2d 989 (2d Cir. 1991) ("*Welch I*")).[4] Thus, Section 27A would require that the court apply the principles of retroactivity set forth in *Welch I* to the facts of this case. Pursuant to these rules, after applying the *Chevron*[5] analysis to the facts of this case, the court might conclude that *Ceres* should not apply retroactively to plaintiffs' 1987 claims. If the court were to reach this conclusion, plaintiffs' claims would be governed by the six year/two year statute of limitations which existed prior to *Ceres*.

Unfortunately for plaintiffs, the Second Circuit very recently refused to adopt a similar grace period theory espoused by the plaintiffs in *Walsche v. First Investors Corp.*, 981 F.2d 649 (2d Cir.1992). In *Walsche*, the plaintiffs filed their complaint three months after the Second Circuit decided *Ceres*. Thus, the district court dismissed their complaint as untimely under *Ceres*. On appeal, the plaintiffs contended that the statute of limitations announced in

---

**4.** Subsequently, on October 7, 1991, the Second Circuit reversed its decision in *Welch I*, holding that *Lampf* and *Beam* required it to apply *Lampf* to all cases that were pending on direct review when *Lampf* was decided. *See Welch v. Cadre Capital*, 946 F.2d 185, 187 (2d Cir.1991) ("*Welch II*").

**5.** This analysis is used to determine whether a new statute of limitations should be applied retroactively. *See Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).

*Ceres* should not be applied to their cause of action. The Second Circuit, however, disagreed, stating that

> [a]lthough we have had occasion to rule on the effect of *Ceres,* we have not established such a grace period for § 10(b) litigants. Providing one at this late juncture would go beyond our Congressional mandate that we apply the law of this jurisdiction, "as such laws existed on June 19, 1991." Even absent consideration of Section 27A, such a rule would unsettle the *established rule in this Circuit that Ceres applies prospectively to cases filed after its announcement.*

*Walsche,* 981 F.2d at 655 (emphasis added). Without the aid of a grace period, plaintiffs' arguments for reinstatement of their 1987 claims based upon Section 27A have no merit. Section 27A simply is inapplicable to the facts of this case. Accordingly, the court denies plaintiffs' cross-motion to reinstate their 1987 claims against Touche.

## II. Plaintiffs' 1988 Claims

Touche seeks to have this court grant it summary judgment with respect to plaintiffs' 1988 claims on the ground that they are time-barred. Pursuant to *Lampf,* claims based upon section 10(b) must be brought one year from the date of discovery and three years from the date of the violation. Neither plaintiffs nor Touche contend that the 1988 claims are outside the three year statute of repose. At issue, however, is whether plaintiffs discovered the facts underlying Touche's alleged violations more than one year prior to filing their second amended complaint on January 14, 1991. The resolution of this issue rests squarely upon a determination as to whether *actual knowledge* of the alleged violations is required or whether *inquiry*

*notice* is sufficient to begin the statute of limitations period running. Plaintiffs contend that because *Lampf* specifically adopted section 9(e) of the 1934 Act as the applicable statute of limitations, actual knowledge is required. *See* Plaintiffs' Memorandum of Law at 25. To the contrary, Touche contends that federal law has always governed the question of when the statute of limitations begins to run, that this standard has always been inquiry notice, and that *Lampf* did not change this. *See* Touche's Memorandum of Law at 33–39.

In *Lampf,* the Supreme Court established a uniform federal statute of limitations period for section 10(b) claims which requires that "[l]itigation instituted pursuant to § 10(b) and Rule 10b–5 ... must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Lampf,* — U.S. at —, 111 S.Ct. at 2782, 115 L.Ed.2d at 336. The Court chose this particular one year/three year limitations period because it concluded that sections 9 and 18 of the 1934 Act targeted the precise dangers that were the focus of section 10(b). *Id.,* — U.S. at —, 111 S.Ct. at 2781, 115 L.Ed.2d at 334. In selecting this particular statute of limitations, the Court recognized that the wording of the various one year/three year limitations periods contained in the 1933 and 1934 Acts differed slightly. Therefore, the Court specifically provided that "[t]o the extent that these distinctions in the future might prove significant, we select as the governing standard for an action under § 10(b) the language of § 9(e) of the 1934 Act, 15 U.S.C. § 78i(e)." *Id.,* — U.S. at — n. 9, 111 S.Ct. at 2782 n. 9, 115 L.Ed.2d at 336.[6]

---

**6.** Section 9(e) of the 1934 Act provides that:

> No action shall be maintained to enforce any liability created under this section, unless brought *within one year after the discovery of the facts constituting the violation and within three years after such violation.*

15 U.S.C. § 78i(e) (emphasis added).

Section 18(c) of the 1934 Act provides that:

> No action shall be maintained to enforce any liability created under this section unless brought *within one year after the discovery of*

> the facts constituting the cause of action and within three years after such cause of action accrued.

15 U.S.C. § 78r(c) (emphasis added).

Section 13 of the 1933 Act provides that:

> No action shall be maintained to enforce any liability created under section 77k or 771(2) of this title unless brought *within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable*

Plaintiffs contend that these distinctions are significant in the present case because although section 13 of the 1933 Act specifically provides for an inquiry notice standard, sections 9(e) and 18(c) of the 1934 Act do not. *See* Plaintiffs' Memorandum of Law at 26–28.

■ The Second Circuit was faced with a similar argument in *Henley v. Slone,* 961 F.2d 23 (2d Cir.1992). In discussing its decision in *Ceres,* which also adopted the limitations period of Section 9(e), the court stated that "[w]e announced a uniform limitations period of the earlier of one year from the date the fraud was or *reasonably should have been discovered* or three years from the date of the transaction." *Id.* at 24 (emphasis added). As this language makes clear, the Second Circuit has read into section 9(e) an inquiry notice standard. In addition, this court and the United States District Court for the Southern District of New York have, likewise, adopted an inquiry notice standard. *See In re General Development Corporate Bond Litigation,* 800 F.Supp. 1128 (S.D.N.Y. 1992); *Aquilio v. Manaker,* No. 90–CV–45, 1991 WL 207473 at *11, 1991 U.S. Dist. LEXIS 14952 at *31–32 (N.D.N.Y. Oct. 10, 1991). In light of these decisions, the court holds that, with respect to the one year prong of the statute of limitations period, *Ceres* and *Lampf* require that plaintiffs commence an action based upon violations of section 10(b) within one year of the time they discover or *reasonably should have discovered* the facts underlying the alleged violations.

Plaintiffs argue, in the alternative, that even if the court applies an inquiry notice standard they could not have known of Touche's role in the CIS fraud until after Touche completed production of documents in July 1990. *See* Plaintiffs' Memorandum of Law at 35. Furthermore, plaintiffs contend that the issue of their due diligence in discovering Touche's fraud is a question

for the jury. *See id.* at 30. Touche, on the other hand, maintains that all of the facts that underlie plaintiffs' claims against it were matters of public record more than one year prior to the date on which plaintiffs filed their second amended complaint. *See* Touche's Memorandum of Law at 20. Moreover, Touche maintains that there is no genuine issue of material fact respecting this issue and, therefore, summary judgment is appropriate. *See* Touche's Opposition Memorandum of Law at 43.

"Summary judgment is appropriate where 'there is no genuine issue as to any material fact' and 'the moving party is entitled to a judgment as a matter of law.'" *Shamrock Technologies, Inc. v. Medical Sterilization, Inc.,* 903 F.2d 789, 791 (Fed. Cir.1990) (citing in turn Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986)). The mere existence of some alleged factual dispute, however, will not defeat such a motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). Rather, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), there must be no *genuine* issue of *material* fact. *Id.* at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211 (emphasis in the original). For purposes of this rule, material facts are defined as those which might affect the outcome of the suit under the governing law. *Id.*

■ In deciding whether to grant summary judgment, the court's function is to determine whether there is a genuine issue for trial, not to weigh the evidence and determine the truth of the matter. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511, 91 L.Ed.2d at 212. Accordingly, the court must leave credibility determinations, weighing of evidence and drawing of legitimate inferences from the facts to the jury. *Id.* at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at

---

*diligence, or, if the action is to enforce a liability created under section 771(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 771(1) of this* title *more than three years after the security was bona fide offered to the public, or under section 771(2) of this title more than three years after the sale.*
15 U.S.C. § 77m (emphasis added).

**424**

216. The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2558, 91 L.Ed.2d at 274.

Once the moving party has met this burden, the burden shifts to the non-movant to demonstrate that there is a genuine issue of material fact. Although the court must draw all inferences in favor of the non-movant, the non-movant must do more "[t]han simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986). "Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact." *Greenblatt v. Prescription Plan Servs. Corp.*, 783 F.Supp. 814, 819–20 (S.D.N.Y.1992) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 (interpreting the "genuineness" requirement)); *see also Shamrock Technologies*, 903 F.2d at 792–93. Rather, to meet its burden, the non-movant must present affirmative evidence from which a jury *might* return a verdict in its favor. *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514, 91 L.Ed.2d at 217 (emphasis added); *see also Greenblatt*, 783 F.Supp. at 819–20. This does not mean, however, that such evidence *must* ensure that the jury will return a verdict in its favor. *See Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514, 91 L.Ed.2d at 217 (emphasis added).

Furthermore, as a preliminary matter, the non-movant must "make a showing sufficient to establish the existence of [the] element[s] essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. If the non-movant fails to satisfy this initial burden, there can be no genuine issue of material fact because "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. Under these circumstances, the moving party is entitled to a judgment as a matter of law. *Id.* at 323, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

▮ In an action such as the present one, "[p]laintiffs have the burden of submitting evidence that they brought suit within one year of discovery and that they remained unaware of the facts supporting their claim without any fault or want of diligence." *Berning v. A.G. Edwards & Sons, Inc.*, 774 F.Supp. 480, 482 (N.D.Ill. 1991). Moreover, complete knowledge of the facts underlying their claims of fraud is not necessary to begin the running of the statute of limitations. As the Tenth Circuit recently stated

[t]he *probability of [the defendant's] participation* in the fraudulent transaction started the statute running as to him, even though [the plaintiff] had no proof of *scienter*. Although *scienter* is a necessary element of a § 10(b) private action, ..., in many cases *scienter* will emerge only as an inference from the facts before the jury. This circumstance cannot be used as a basis for emasculating the statute of limitations.

*State of Ohio v. Peterson, Lowry, Rall, Barker & Ross*, 651 F.2d 687, 695 (10th Cir.1981) (emphasis added).

With these guidelines in mind, the court must determine whether Touche is entitled to the relief it seeks.

In *Klein II*, this court held that "[t]he allegations in the first amended complaint that the defendants used 'fraudulent accounting practices' are not sufficient to indicate that plaintiffs were aware of or should have been aware of fraud by Touche at that time." *Id.* 770 F.Supp. at 84 (citing *Robertson v. Seidman & Seidman*, 609 F.2d 583, 589 (2d Cir.1979) (whether plaintiff should have suspected fraud by accountant in section 10(b) action was question for jury)). Plaintiffs rely upon this statement for the proposition that the question of a plaintiff's due dili-

gence in discovering fraud is always inappropriate for summary disposition.

The court's statement in *Klein II* was not meant to suggest such a broad rule nor does the court believe that *Robertson* stands for such a sweeping proposition. In *Robertson*, the plaintiff argued that he had " 'exercised reasonable care and diligence in seeking to learn facts which would disclose fraud.' " *Robertson*, 609 F.2d at 587. On appeal, the Second Circuit stated that the central issue was "[w]hether the factors relied upon by the district court-in holding that the appellant ' " " 'in the exercise of reasonable diligence', *Arneil v. Ramsey*, [550 F.2d 774] at 781 [2d Cir. 1977], ... should have discovered the alleged fraud before July 6, 1975,"—were sufficient to warrant summary judgment.' " *Id.*, 609 F.2d at 587–88. The Second Circuit found that the district court had relied primarily on three factors: (1) plaintiff's own admission that he thought he "had been taken" and "swindled;" (2) plaintiff's participation in a similar action; and (3) certain public information regarding Seidman & Seidman including a letter contained in an amendment of the corporation's Form 10–K, the replacement of Seidman & Seidman by another accounting firm, and facts contained in SaCom's 1973 financial statements. *Id.*, 609 F.2d at 588. In holding that this information was not sufficient to award summary judgment to the defendant on the issue of the plaintiff's due diligence, the court stated that "[i]ssues of due diligence and constructive knowledge depend on inferences drawn from the facts of each particular case. *When conflicting inferences can be drawn from the facts, summary judgment is inappropriate.*" *Id.*, 609 F.2d at 591 (emphasis added).

Based upon this language, it cannot be said that *Robertson* stands for the proposition that summary judgment is inappropriate in all cases. Rather, *Robertson* would only foreclose such summary disposition when the court finds that conflicting inferences can be drawn from the facts before it. On the other hand, in those cases in which the court finds that only one reasonable inference can be drawn from the facts, summary judgment would, even under

*Robertson*, be warranted. Thus, the summary judgment standard the Second Circuit applied in *Robertson* in the context of section 10(b) violations is no different than the one the Supreme Court adopted in *Anderson* and *Celotex* and that this court has always applied.

Recently, on a motion to dismiss in a case factually similar to the present one, the United States District Court for the Southern District of New York reached the same conclusion when it stated that

> [b]ecause "[t]he test as to when fraud should with reasonable diligence have been discovered is an objective one," *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir.1983), a court's determination that the information available to a plaintiff in a given instance should (or should not) have given him reason to consider and investigate the probability of fraud is surely warranted in appropriate cases; at the very least, it cannot absolutely be precluded.

*In re General Development Corporate Bond Litigation*, 800 F.Supp. 1128, 1136 (S.D.N.Y.1992).

Based upon this conclusion, the district court granted the defendants' motion to dismiss holding that "[i]t appears to this Court beyond cavil that no reasonable adult reader of the 1988 Prospectus and later filed documents could have remained in ignorance of the likelihood that something was severely amiss at GDC." *Id.*, 800 F.Supp. at 1142. Thus, in order to determine whether summary judgment is appropriate in the present case, the court must look to the specific information which plaintiffs had available to them to support their allegations against Touche.

With respect to Touche, the gravamen of plaintiffs' complaint is found in paragraph 57 which states that

> [i]n the course of its audits and interim reviews of CIS' financial statements, defendant Touche violated auditing standards. Defendant Touche did not perform its audits pursuant to GAAS and did not properly apply GAAP. Defendant Touche knew, or was reckless in not

knowing, of the material misstatements and nondisclosures alleged herein.

*See* Plaintiffs' Second Amended Complaint at ¶ 57.

The complaint goes on to state that

[a]ccording to the Corporate Finance Article, "[t]o make sure the company showed the growth [Goetzmann] wanted, CIS apparently used unrealistically high residual value estimates, allowing it to report fat earnings by recognizing income it might (or might not) receive in the future. *Without Touche's certification of CIS' financial statements, the investing public would have been aware of CIS' true financial condition.*

*See* Plaintiffs' Second Amended Complaint at ¶ 59 (emphasis added).

Finally, plaintiffs contend that

Touche could not have properly reviewed CIS financial condition because CIS' records were in complete disarray. According to the Corporate Finance Article, CIS' back office kept track of 27,000 leases manually, not by computer. Because of the lack of computerization to track leases, according to the Corporate Finance Article, CIS "could not predict cash flow or put together accurate financial plans." As of November 1989, the date of the Corporate Finance Article, "CIS cannot put reliable figures on either its assets or liabilities."

*See* Plaintiffs' Second Amended Complaint at ¶ 60.

As the basis for these allegations, plaintiffs cite a number of publicly available documents in their second amended complaint which they contend demonstrate that the defendants, including Touche, misrepresented CIS' true financial position. These include, among other things, a press release dated January 15, 1988, *see* Plaintiffs' Second Amended Complaint at ¶ 33; CIS' annual report on Form 10–K filed May 12, 1988, *see id.* at ¶¶ 37–41; a press release dated May 13, 1988, *see id.* at ¶¶ 34–36; a press release dated October 7, 1988, *see id.* at ¶ 51; a *Corporate Finance* article dated November 1989, *see id.* at ¶ 39; CIS' quarterly report on Form 10–Q filed July 14, 1988, *see id.* at ¶¶ 48–49; and CIS' Chapter

11 petition, and the Prinzing Affidavit filed therewith, on January 13, 1989, *see id.* at ¶¶ 54–55.

Touche claims that given this information, all of it available more than one year prior to plaintiffs' filing their second amended complaint, "[p]laintiffs would have been able to allege, ..., that Touche Ross & Co., having stated that it performed proper audits of the 1987 Financials and the 1988 Financials, either knew or was reckless in not knowing of the alleged accounting improprieties." *See* Touche's Memorandum of Law at 5–6. Specifically, Touche points to the following facts:

(a) Touche Ross & Co. represented in its audit reports that, in its opinion, the accounting utilized by CIS in the Company's 1987 and 1988 Financials, including for the Aerolease Transaction, CMI Acquisition and JetStream Partnerships, was in conformity with generally accepted accounting principles;

(b) Touche Ross & Co. also represented in its audit reports with respect to the 1987 and 1988 Financials that it had conducted its audits in accordance with generally accepted auditing standards; and

(c) Prior to January 14, 1990, there were public allegations that the accounting by CIS for the Aerolease Transaction, the CMI Acquisition and the JetStream Partnerships was improper and masked the declining profitability of CIS.

*See* Touche's Memorandum of Law at 5.

Plaintiffs do not deny that the information cited by Touche was available to them more than one year prior to the filing of their second amended complaint. Rather, plaintiffs contend that these documents contain at best only "innocuous references" to Touche which in no way suggest that "Touche was somehow culpably involved in the CIS fraud." *See* Plaintiffs' Memorandum of Law at 34. Moreover, plaintiffs contend that they "[c]ould not and did not discover Touche's role in the CIS fraud until after July 1990, when Touche completed production of documents in response to the subpoena." *See id.* at 35. In this regard, plaintiffs assert that they needed to review Touche's workpapers "[i]n order

to find out what Touche knew and to be able to make sustainable allegations of scienter." *See id.* at 27–28.

In support of this argument, plaintiffs supplied the court with the affidavit of Joseph J. Lucas, a certified public accountant, who reviewed Touche's audit workpapers. Mr. Lucas stated that "[c]omparing these audit workpapers to the appropriate revenue recognition principles under [GAAP], I concluded that CIS' booking of all such income was incorrect.... Touche's acquiescence with [CIS'] accounting treatments in 1987 and 1988 were unsupportable deviations from GAAP." *See* Lucas Affidavit at ¶ 6. In summation, Mr. Lucas offers the conclusory statement that

[m]y conclusions regarding the foregoing were based upon my inspection of the audit workpapers prepared by Touche of CIS' financial results. Touche's involvement in these matters underlying this lawsuit could not have been understood without reviewing Touche's relevant workpapers because *such matters, including Touche's role, were not of public record (ie.—CIS Form 10–K or its annual reports).*

*See id.* at ¶ 8 (emphasis added).

The court finds plaintiffs' position untenable. Although arguably none of the documents cited by Touche, viewed separately, would be sufficient to put plaintiffs on notice of Touche's role in the CIS fraud, read together only one inference can be drawn from these facts—plaintiffs had sufficient information available to them more than one year prior to filing their second amended complaint to suggest that Touche had played at least some role in the CIS fraud. Without reiterating verbatim the substance of every statement known to plaintiffs, the court finds especially convincing Touche's representations in its "Report of Independent Auditors" that was included in CIS' 1988 Annual Report. This report states that:

[w]e [Touche] have examined the consolidated balance sheets of [CIS] at February 29, 1988 and February 28, 1987, and the related consolidated statements of earnings, shareholders' equity and cash flows for the years ended February 29, 1988 and February 28, 1987 and 1986 ... Our examinations were made in accordance with *generally accepted auditing standards* and, accordingly, included *such tests of the accounting records and such other auditing procedures as we considered necessary* in the circumstances.

*In our opinion,* the aforementioned consolidated financial statements present fairly the financial position of [CIS] and subsidiaries at February 29, 1988 and February 28, 1987 and the results of their operations and cash flows for the years ended February 29, 1988 and February 28, 1987 and 1986 *in conformity with [GAAP] applied on a consistent basis.*

/s/ Touche Ross & Co.

*See* CIS 1988 Annual Report dated May 12, 1988, at 37 (emphasis added).

Given this report, the court finds unsupportable Mr. Lucas' statement that Touche's role was "not of public record." Although the full extent of Touche's involvement might not have been a matter of public record, certainly Touche's statement in its "Report of Independent Auditors" that CIS' financial statements were prepared in conformity with GAAP was sufficient, when read in conjunction with the other information available to plaintiffs, to apprise them of the "possibility" that Touche was involved in the CIS fraud.

Furthermore, although it is true that the *Corporate Finance* article only mentions Touche by name once, other information in that article pertains to the accounting practices employed by CIS, and arguably acquiesced in by Touche as its 1988 "Report of Independent Auditors" readily establishes. For example, in reviewing CIS' acquisition of CMI, the article states that

[s]oon after the deal closed, Cherney [CMI's President] walked, along with 34 CMI executives, and later formed a competing firm called Encore. Stripped of its key managers, CMI was worth considerably less than Goetzmann had paid.... *In its financial statements for fiscal 1988 (which ended in February of that*

*year*) CIS *gave the impression that it was digesting CMI without a hitch.*

*See* "Harry Goetzmann's Grand Illusion," *Corporate Finance,* November 1989 at 40 (emphasis added).

Furthermore, the article states that

[n]early a year after filing its bankruptcy petition, CIS *cannot put reliable figures on either its assets or liabilities....* The *files for roughly 2,700 lease transactions have mysteriously disappeared. The company's books are such a mess* that an incredible 50 percent of its receivables are overdue 60 days or longer. Amazingly, according to court filings, "management was so incompetent ... that it asked *Touche Ross* [its auditor] to hire local college students to try to collect the past due receivables."

*Id.* at 39 (emphasis added).

Another factor which troubles the court is plaintiffs' apparent total failure to make *any* attempt to discover Touche's role in the CIS fraud for *more than eighteen months* after they filed their original complaint. In their original complaint, plaintiffs relied upon CIS' 1988 Annual Report, among other things, as a basis for their claims of fraud against CIS and the individual defendants. As noted above, it is obvious from reading this Annual Report that Touche was involved in its preparation in its role as CIS' independent auditor. Certainly, given this fact, it would have been logical for plaintiffs to subpoena Touche's workpapers to substantiate their allegations, even if they did not suspect Touche of any wrongdoing at the time. This plaintiffs failed to do. It was not until more than a month after plaintiffs filed their first amended complaint that they finally subpoenaed documents from Touche. Plaintiffs offer no explanation for their delay in seeking to discover Touche's workpapers which they now maintain are critical to their case.

Based upon a thorough review of all the documents upon which plaintiffs base their allegations against Touche, the court is convinced that there is only one reasonable inference that can be drawn, and that inference is that plaintiffs knew of, or with reasonable diligence could have discovered, Touche's role in the CIS fraud more than one year prior to filing their second amended complaint on January 14, 1991. Accordingly, the court grants Touche's motion for summary judgment as to plaintiffs' 1988 federal securities claims.

## III. Plaintiffs' Pendent State Claims

■ Touche asserts that if the court dismisses plaintiffs' 1988 federal security claims, it should likewise dismiss plaintiffs' pendent state claims because the court lacks an independent jurisdictional basis over these claims.[7] *See* Touche's Memorandum of Law at 40. The court disagrees. Although the court has dismissed all of the federal claims against Touche, it still must adjudicate the federal claims against the individual defendants. Thus, with respect to the remainder of this litigation, Touche is, in effect, a pendent party.

As the Second Circuit recently stated, "effective December 1, 1990, [the effective date of 28 U.S.C. § 1367] the district court generally has supplemental jurisdiction over state-law claims against a non-diverse party if it has original jurisdiction over related claims against another party." *Hogan v. Consolidated Rail Corp.,* 961 F.2d 1021 (2d Cir.1992). In the present case, the court has original jurisdiction over the federal securities claims alleged against the individual defendants. The common law claims, alleged against both Touche and the individual defendants, are related to these federal claims. Thus, pursuant to section 1367, the court has supplemental jurisdiction over Touche as to these common law claims despite the fact that the court has dismissed all of the federal claims alleged against Touche. Accordingly, the court de-

---

7. These common law claims are governed by New York's six-year/two-year statute of limitations. Although the court has ruled that, for statute of limitations purposes, plaintiffs' claims against Touche do not relate back to the date of the original complaint, these claims do arise from the same transactions and occurrences as the federal securities claims, all of which occurred in 1987 and 1988. Thus, these claims were timely filed.

nies Touche's motion to dismiss plaintiffs' common law claims.

### CONCLUSION

For the reasons stated above, upon reconsideration of its July 19, 1991, decision, the court concludes that the one-year/three-year statute of limitations enunciated in *Ceres* applies to plaintiffs' allegations against Touche in their second amended complaint. Thus, the court denies plaintiffs' cross-motion to reinstate their 1987 claims. With respect to plaintiffs' 1988 claims, the court concludes that plaintiffs knew or with reasonable diligence should have known of the facts underlying their claims against Touche more than one year prior to filing their second amended complaint. Thus, the court grants Touche's motion for summary judgment on plaintiffs' 1988 federal securities claims. Finally, the court finds that Touche is a pendent party with respect to the remainder of this litigation. Accordingly, pursuant to 28 U.S.C. § 1367, the court denies Touche's motion to dismiss plaintiffs' common law claims.

IT IS SO ORDERED.