Stewart RAHR, Plaintiff,

v.

GRANT THORNTON LLP,
et al., Defendants.

CIV. A. No. 3:99CV2305G.

United States District Court,
N.D. Texas,
Dallas Division.

March 8, 2000.

Tom P. Allen, Timothy M. McDaniel, McDaniel & Allen, Houston, TX, for plaintiff.

Robert W. Coleman, Brown McCarroll Trammell Crow Center, Dallas, TX, for Grant Thornton, LLP.

Stephen Granberry Gleboff, Hughes & Luce, Dallas, TX, for Holland & Knight, LLP.

R. Keith Walker, Law Office of R. Keith Walker, Dallas, TX, for Gary L. Rowan.

## MEMORANDUM ORDER

FISH, District Judge.

Before the court are the following motions: (1) the motions of the defendants, Grant Thornton, L.L.P. ("Grant Thornton"), Holland & Knight, L.L.P. ("Holland & Knight"), and Gary L. Rowan ("Rowan") (collectively, the "defendants") to dismiss this case for failure to state a claim on which relief can be granted; (2) Holland & Knight's motion to sever and transfer; and (3) the motion of the plaintiff, Stewart Rahr ("Rahr"), to consolidate this case with other cases presently pending in this court. For the reasons set forth below, the defendants' motions to dismiss are granted, and the rest of the motions are denied as moot.

## I. *BACKGROUND*

In the fall of 1995, Rahr began investing in Continental Investment Corporation ("CIC"), motivated by a series of representations made by Dale Sterritt ("Sterritt"), CIC's president, to Rahr's son. Defendant Grant Thornton LLP's Brief in Support of Motion to Dismiss ("Brief") at 3. From that time through March of 1998, Rahr spoke with Sterritt in person and by telephone on several occasions, and for part of that period, the two conversed daily. *Id.* at 4. Rahr relied upon Sterritt's representations and assurances in making further investments in CIC and even granted Sterritt full discretion to purchase stock on his behalf. *Id.*

From the last half of 1997 and into 1998, the price of CIC's stock declined from a high of $25 per share to below $10, and by August of 1998, CIC's stock was closing at prices between $3 and $1.94 per share. *Id.* at 5. Concerned with the dramatic decline in CIC's price, Rahr began investigating the business affairs of Sterritt and CIC and discovered what he believed was evidence of a "massive securities fraud." *Id.* On October 9, 1998, Rahr filed a complaint, alleging that Sterritt had violated sections 10(b) and 18 of the Securities Exchange Act of 1934 ("Exchange Act"). *Id.* 5–6. That case—styled *Rahr v. Sterritt*, No. 3:99–CV–0628–G—is also pending before this court.

On October 8, 1999, Rahr filed this action against Grant Thornton, Holland & Knight, and Rowan—the auditors and attorneys for CIC at the time of its alleged fraud. In his complaint, Rahr alleges that beginning in 1994 and continuing over the next several years, the defendants learned of but concealed mounting evidence of Sterritt's fraud and may have even aided it. Plaintiff's Response to Defendant Grant Thornton's Motion to Dismiss and Brief in Support ("Grant Thornton Response") at 3; Plaintiff's Response to Defendant Holland & Knight's Motion to Dismiss and Brief in Support at 2–3. Further, Rahr alleges that Grant Thornton assisted Sterritt in covering up his fraudulent activities by repeatedly approving accounting treatments that violated generally accepted accounting principles and by issuing "clean" audit reports on CIC's financial condition upon which Rahr relied. Grant Thornton Response at 3. Each of these defendants now brings a

separate motion to dismiss, arguing that Rahr's claims are time barred or, alternatively, that his pleadings are deficient.

## II. *ANALYSIS*

### A. *Statute of Limitations— Federal Claims*

■ Claims brought pursuant to section 10(b), Rule 10b–5, and section 18 of the Securities Exchange Act of 1934 must be filed "within one year after the discovery of the facts constituting the violation and within three years after such violation." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991); *Topalian v. Ehrman,* 954 F.2d 1125, 1135 (5th Cir.), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992); *see also* 15 U.S.C. § 78r(c) (1997) (providing limitations for section 18 claims). The one-year "discovery" limitations period begins to run on the date that the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the alleged fraudulent conduct. See *Jensen v. Snellings,* 841 F.2d 600, 606 (5th Cir.1988); *Vigman v. Community National Bank & Trust Co.,* 635 F.2d 455, 459 (5th Cir.1981).

■ It is unnecessary for the plaintiff to have actual knowledge of fraud for the limitations period to begin to run. *Lampf,* 501 U.S. at 363, 111 S.Ct. 2773; *Jensen,* 841 F.2d at 607. Rather, "[t]he requisite knowledge that a plaintiff must have to begin the running of the limitations period 'is merely that of "the facts forming the basis of his cause of action," . . . not that of the existence of the cause of action itself.' " *Jensen,* 841 F.2d at 606 (quoting *Vigman,* 635 F.2d at 459); see also *Azalea Meats, Inc. v. Muscat,* 386 F.2d 5, 9 (5th Cir. 1967).

■ Courts apply an objective standard to determine whether a plaintiff has satisfied his duty to exercise reasonable diligence to discover fraud. *Jackson v. Speer,* 974 F.2d 676, 679 (5th Cir.1992). Under this standard, a plaintiff must diligently pursue discovery of his claim. See *Jensen,* 841 F.2d at 607. A potential plaintiff is not permitted a "leisurely discovery of the full details of the alleged scheme," nor are investors "free to ignore 'storm warnings' which would alert a reasonable investor to the possibility of fraudulent statements or omissions in his securities transaction." *Id.* Instead, an investor "who has learned of facts which would cause a reasonable person to inquire further must proceed with a reasonable and diligent investigation, and is charged with the knowledge of all facts such an investigation would have disclosed." *Jensen,* 841 F.2d at 607. The defendants argue that, under this objective standard, Rahr had acquired notice more than one year before he filed this suit and that his claims are, in consequence, time barred.

### 1. Resolution as a Matter of Law

■ In response to the defendants' arguments, Rahr first contends that the question of whether a plaintiff has exercised reasonable diligence is usually a question for the jury and that a determination of the issue by the court, at this stage of the case, is therefore improper. The overwhelming balance of case law, however, is to the contrary. Several courts have explicitly rejected Rahr's argument, going so far as to hold that the objective test to determine diligence not only allows but "*mandates* dismissal of . . . a plaintiff's securities fraud claim when the 'pleadings disclose facts sufficient to have placed the plaintiff on inquiry notice of the alleged fraud prior to the one-year cutoff.' " *Barnes v. Printron, Inc.,* No. 93–CIV–5085(JFK), 1998 WL 778378 at *6 (S.D.N.Y. Nov.5, 1998) (emphasis added);

see also *Reed v. Prudential Securities Inc.*, 875 F.Supp. 1285, 1290 (S.D.Tex.1995) (dismissing claims as time barred based on plaintiff's inquiry notice), *aff'd*, 87 F.3d 1311 (5th Cir.1996) (table); *Wachovia Bank & Trust Company v. National Student Marketing Corporation*, 461 F.Supp. 999, 1010 (D.D.C.1978) (holding that a plaintiff's knowledge that a law firm represented a company in connection with its stock sales, was sufficient *as a matter of law* to put plaintiffs on inquiry notice), *rev'd on other grounds*, 650 F.2d 342 (D.C.Cir.1980), *cert. denied*, 452 U.S. 954, 101 S.Ct. 3098, 69 L.Ed.2d 965 (1981); *In re General Development Corporation Bond Litigation*, 800 F.Supp. 1128, 1136 (S.D.N.Y.1992) (dismissing case brought under the Exchange Act as time barred and holding that "a court's determination that the information available to a plaintiff in a given instance should (or should not) have given him reason to consider and investigate the probability of fraud is surely warranted in appropriate cases...."), *aff'd*, 991 F.2d 36 (2d Cir.1993). Therefore, the court may dismiss Rahr's claims as time barred if it concludes that the facts put Rahr on notice of the existence of the fraud.

### 2. Inquiry Notice

■ As discussed above, an investor who has learned facts that would cause a reasonable person to inquire further must proceed with a reasonable and diligent investigation and is charged with the knowledge of all facts such an investigation would have disclosed. This standard is referred to as "inquiry notice." If Rahr had inquiry notice of the defendants' alleged fraud more than one year before he filed the present case, his claims are time barred.

Rahr argues that while he may have had knowledge of Dale Sterritt and CIC's wrongdoing, his "[k]nowledge of fraud by CIC does not equate to knowledge of fraud by its accountants [or other defendants]." Grant Thornton Response at 6. However, this argument somewhat misstates the proper test. The question this court must decide is not whether Rahr's knowledge of CIC's fraud equates to knowledge of the defendants' fraud. Rather, this court must determine at what point Rahr acquired knowledge that would have caused a reasonable investor to investigate the possibility that the defendants had been involved in CIC's scheme. It is on that date that the limitations period for Rahr's claims against the defendants would have been triggered. To determine this date, the court will look both to the specific facts of this case, as well as to what facts other courts have deemed sufficient to place potential plaintiffs on inquiry notice.

Because relevant case law from this circuit is scant, each party contends that court decisions outside of this circuit favor his/its position. First, the defendants point to *Wachovia Bank*, 461 F.Supp. at 1009. There, the trial court held that the plaintiffs had notice of a company's attorneys' wrongdoing when they had knowledge of (1) a dramatic drop in the company's stock price; (2) news articles relating to the company's financial difficulties; and (3) the existence of other lawsuits against the company. See *id.* at 1009.

Although Rahr argues that the D.C. Circuit's reversal of *Wachovia* should prevent its application to the present case, the court disagrees. The district court's ruling in *Wachovia* was reversed only because the trial court had applied the wrong statute of limitations, not because the facts failed to trigger the limitations period. Using a two-year standard, the trial court appropriately looked to see if the plaintiffs had inquiry notice two years before they filed suit. At that time, all of the factors

listed above (decline in stock price, *etc.*) had occurred, and the trial court ruled that these factors, when viewed together, were sufficient to put the plaintiffs on inquiry notice.

The D.C. Circuit, however, held that the district court should have applied a three-year statute of limitations. See *Wachovia Bank & Trust Company, N.A. v. National Student Marketing Corporation,* 650 F.2d 342, 348 (D.C.Cir.1980), *cert. denied,* 452 U.S. 954, 101 S.Ct. 3098, 69 L.Ed.2d 965 (1981). Looking back three years from the date of the plaintiffs' filing, only one of the factors—the publication of one of the news articles—had occurred. The single news article, the appellate court concluded, was insufficient to put the plaintiffs on inquiry notice. See *id.* at 349. The circuit court, though, agreed with the district court that if all of the factors had occurred before the limitations period was triggered, they, "taken cumulatively, were sufficient to warn appellants of the possibility of fraud on the part of the accountant-defendants...." *Id. Wachovia,* therefore, was reversed only because of a misapplication of the statute of limitations and not because of any inadequacy of the factors—taken together—to trigger the limitations period. Accordingly, comparing the facts in *Wachovia* to those here is appropriate.

The defendants also rely on *Klein v. Goetzmann,* 810 F.Supp. 417 (N.D.N.Y. 1993). There, the plaintiffs initially filed a securities fraud case against company insiders based on accounting irregularities. Later, the plaintiffs amended their complaint to add the company's independent auditor, claiming—as Rahr does in this case—that the auditor fraudulently failed to "perform its audits pursuant to GAAS and did not properly apply GAAP." *Id.* at 425. The court held that public reports in which the auditor represented that it had followed GAAP, combined with public alle-gations of improper accounting methods, was sufficient "to apprise [the plaintiffs] of the 'possibility' that [the auditors were] involved in [the company's] fraud." *Id.* at 427.

The presence of inquiry notice here is even clearer than in *Wachovia* or *Klein.* Rahr himself admits that before October 8, 1998, he had read each of Grant Thornton's audit reports for the years 1994–1997. Complaint ¶¶ 121–130. He knew that those reports opined that CIC's financial statements "presented[ed] fairly, in all material respects, the consolidated financial position of Continental Investment Corporation ... in conformity with generally accepted accounting principles." *Id.* ¶ 129. Moreover, Rahr stated that he had relied on Grant Thornton's audit reports to conclude that it was safe to take CIC's financial statements at face value. *Id.* ¶¶ 134–38. Finally, Grant Thornton's audit reports and other disclosures—based upon information received from Holland & Knight and Rowan—caused Rahr to believe that CIC's financial statements were free from fraud or material error and that CIC was telling the truth when it reported that its "assets, net worth, and market value were steadily growing." *Id.* ¶¶ 137–38.

However, these beliefs would not last. By the summer of 1998, Rahr had become so "[c]oncerned about the lack of progress" at CIC and so suspicious of its insiders, that he felt the need to personally "engage[ ] lawyers and consultants to begin investigating the business affairs of Dale Sterritt [and] CIC." Third Amended Complaint in *Rahr v. Sterritt* ("Sterritt Complaint") ¶ 140, attached as Exhibit A to Complaint and incorporated therein by reference (¶ 12). By the fall of 1998, Rahr's lawyers and consultants had already completed the work of "assembling corporate records, real property conveyances, and

similar documents, and ... interviewing people associated with various CIC and WasteMasters transactions" to uncover the Company's alleged fraud. *Id.* And by September of 1998, he and his team had amassed "abundant proof" of "a massive securities fraud operation" within CIC. *Id.*

A reasonable investor, armed with the knowledge that CIC had been engaged in fraud and having previously relied on the specific reports and endorsements of the defendants found in the company's public disclosures, would have continued investigating to determine whether the defendants had also participated in CIC's fraud. And as discussed above, this knowledge of the possibility of a claim is sufficient to put a plaintiff on inquiry notice and to trigger commencement of the limitations period.[1] Therefore, at the very latest, Rahr was on inquiry notice of the defendants' alleged fraud in September of 1998—the date Rahr himself maintains that his investigation had uncovered "abundant proof" of "a massive securities fraud operation" within CIC. Sterritt Complaint ¶ 140. Even if Rahr is given the benefit of this late date, his claims in this case were filed more than a year after he had such notice. Accordingly, those claims are time barred.

### 3. Tolling

■ Rahr, however, goes on to argue that the even if he had inquiry notice of his claims more than a year before he filed this suit, the statute of limitations was tolled pending a determination on class certification in *Krogman v. Grant Thorn-* *ton*—a case with related claims. The court disagrees.

■ The Supreme Court established the class action tolling doctrine in *American Pipe & Construction Company v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), holding that the filing of a class action tolled the statute of limitations for all purported class members who sought to intervene after the denial of class certification. *Id.* at 554, 94 S.Ct. 756. Were the rule otherwise, the Court reasoned, putative class members would have to file individual claims to protect themselves against the possibility that the class would not be certified. See *id.* at 553–54, 94 S.Ct. 756. The result would be an increase in cases filed with accompanying judicial inefficiency. *See id.* Later, the court extended class action tolling to putative class members who bring separate lawsuits after the denial of class certification. See *Crown, Cork & Seal Company, Inc. v. Parker,* 462 U.S. 345, 350, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). After a statute has been tolled, the limitations clock then resumes only after the court makes a class certification decision and the class member "opts out" of the class. See *Tosti v. City of Los Angeles,* 754 F.2d 1485, 1488 (9th Cir. 1985).

Rahr argues that the pending class certification in *Krogman* tolled the limitations period for the claims he brings in this case. The class action tolling doctrine, however, was never intended to apply to plaintiffs like Rahr who file separate suits *prior to* a

---

1. Rahr counters with a district court case of his own, *Wenneman v. Brown,* 49 F.Supp.2d 1283 (D.Utah 1999). However, in *Wenneman,* the plaintiffs had not been as clear about their knowledge of the attorneys' role in preparing disclosures, and the court concluded that knowledge of the company's fraud itself, coupled with mere knowledge of the identity of the company's counsel, was insufficient to provide inquiry notice of the attor-

neys' contributions to the fraud. *Id.* at 1293. Here, the facts tell a different story. Rahr alleges that he relied on the work product of the defendants and knew specifically who had produced it. Complaint ¶¶ 121–130. Thus, when he discovered the fraud, he had to have questioned the legitimacy of the disclosures on which he had previously relied. This was enough to put him on inquiry notice.

decision being reached on the class certification issue. None of the judicial efficiency purposes of the doctrine is served by applying it to plaintiffs who voluntarily pursue their individual claims even before the court determines whether the class is viable. Other district courts have so held.

For example in *Wachovia,* discussed above, the plaintiffs argued that the filing of several class actions—of which they were asserted members—tolled the running of the limitations period. Observing that the plaintiffs had filed their separate suit before class certification had been decided, the court concluded that to apply the tolling doctrine and allow the separate case to proceed "would sanction duplicative suits and violate the policies behind *American Pipe.*" *Wachovia,* 461 F.Supp. at 1012. Moreover the court noted that "[b]y filing their action before a certification decision, ... and then claiming the benefits of tolling, [the plaintiffs] appear to have been manipulating the tolling doctrine and other class action procedures." *Id.*

As discussed above, *Wachovia* was reversed because the district court applied the incorrect statute of limitations, but not before the appellate court endorsed the trial court's treatment of the class tolling doctrine: "The district court correctly ruled that appellants fail[ed] to qualify for the *American Pipe* tolling rule. Here, certification of the class was granted, not denied. Moreover, no intervention was ever attempted; appellants filed their own action nine months *before* the district court granted certification, and preferred to pursue their own case rather than seek class relief." *Wachovia,* 650 F.2d at 346 n. 7 (emphasis added).

More recently, in *In re Brand Name Prescription Drugs Antitrust Litigation,* 1998 WL 474146 (N.D.Ill. Aug.6, 1998), the district court echoed the sentiments of *Wachovia,* holding that it would be incon-sistent with the purpose of the class action tolling doctrine to apply the doctrine to claims of individual plaintiffs who filed their actions prior to any determination of class certification. *Id.* at *8 ("[I]t would be inequitable to now allow the Individual Plaintiffs to reap the benefits of a doctrine which is designed for a group—the Class and its putative members—which they have disavowed being a part of from the beginning."). See also *Stutz v. Minnesota Mining Manufacturing Company,* 947 F.Supp. 399, 401–04 (S.D.Ind.1996) (refusing to apply class tolling to individual claim asserted while class action determination was pending).

These cases make clear that the class action tolling doctrine is intended to avoid the injustice and judicial inefficiency of requiring putative class members to file individual suits or to lose their claims. It is not intended to be a tool to manipulate limitations periods for parties who, intending all along to pursue individual claims, assert reliance on the proposed class action just long enough to validate their otherwise time barred claims. See *Wachovia,* 461 F.Supp. at 1012. Here, by filing an individual suit before class certification was determined, Rahr frustrated the purpose of the class action tolling doctrine and should not now be able to reap its benefits. Accordingly, the court finds that the class action in *Krogman v. Grant Thornton* did not toll the statute of limitations for Rahr's claims in this case.

### B. *Pendent State Law Claims*

Rahr has also brought several state law claims against these defendants. *See* Counts III, IV, V, VI, VII, and VIII of the Complaint. Because all of his federal claims are time barred, Rahr's pendent state law claims are, in the exercise of the court's discretion, dismissed without prejudice.

Federal court jurisdiction exists over an entire action, including state

law claims, when the federal and state law claims " 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.' " *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (quoting *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Yet supplemental jurisdiction over state law claims is a "doctrine of discretion, not of plaintiff's right." *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130. Consequently, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie–Mellon,* 484 U.S. at 350, 108 S.Ct. 614.

■ When the federal claims are dismissed before trial and only state law claims remain, the balance of factors to be considered under the supplemental jurisdiction doctrine weigh heavily in favor of declining jurisdiction; therefore, the federal court should usually decline the exercise of jurisdiction over the remaining claims and send them to state court. See *id.* at n. 7, 108 S.Ct. 614. According to the Fifth Circuit, "[o]ur general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Industries,* 972 F.2d 580, 585 (5th Cir. 1992) (citing *Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir.1989)).

Here, the federal claims against all of the defendants have been dismissed and only state law claims remain. Because the federal claims are being dismissed before trial, the factors of judicial economy, con-

venience, fairness, and comity suggest that this court ought to decline jurisdiction over the remaining state law claims against these defendants. *See* 28 U.S.C. § 1367(c)(3). Those claims are therefore dismissed without prejudice.

## III. *CONCLUSION*

Because Rahr had inquiry notice of his section 10(b) and section 18 claims against the defendants more than a year before he filed his suit and because the filing of *Krogman v. Grant Thornton* did not toll the statute of limitations with respect to his claims, all of Rahr's federal securities law claims are time barred. Accordingly, the defendants' motions to dismiss those claims are **GRANTED**. Further, since no federal law claims remain in this case, Rahr's other claims against the defendants—all of which are governed exclusively by state law—are **DISMISSED** without prejudice to Rahr's refiling them in state court.[2]

**SO ORDERED.**

---

**2.** Because this case is being dismissed, Holland & Knight's motion to transfer and Rahr's

motion to consolidate are denied as moot.